18523

ROBERT E. LEE & CO., Inc., and Dixie Constuction Company of Georgia , Inc., Appellants, v. COMMISSION OF PUBLIC WORKS OF the CITY OF GREENVILLE, South Carolina, Respondent.

(149 S. E. (2d) 55)

*Messrs. David L. Freeman, Esq.,* of Greenville, and *Hitch, Miller, Beckmann & Simpson,* of Savannah, Georgia, *for Appellants,*

*Messrs. Rainey, Fant & Horton,* of Greenville, *for Respondent,*

*Messrs. David L. Freeman, Esq.,* of Greenville, and *Hitch, Miller, Beckmann & Simpson,* of Savannah, Georgia, *for Appellants in Reply,*

June 16, 1966.

LIONEL K. LEGGE, Acting Justice.

Appellants, bidding jointly, were awarded on April 28, 1959, the contract for installation of a 48-inch water pipe line from respondent's North Saluda Dam to Travelers Rest in Greenville County, South Carolina, a distance of about fifteen miles. After completion of the work they brought this action against the Commission, alleging in their complaint two causes of action. Under the first, they sought to recover $65,693.20, the balance allegedly due them under the contract. Under the second, they sought damages in the amount of $260,804.09 for increased cost of construction allegedly resulting from  the Commission's failure to reveal on its plans the true subsoil conditions and ground water

levels shown by its test hole borings made in anticipation of the call for bids.

Upon the trial of the case, in February, 1964, the jury rendered a verdict in favor of the plaintiffs on the first cause of action, and in favor of the defendant on the second. No appeal was taken from the verdict on the first cause of action, but the question of whether interest was recoverable on the amount of it was, by agreement, reserved for later determination by the trial judge. His order of June 16, 1964, denied recovery of interest; and from that order the plaintiffs appealed. A separate appeal was taken by the plaintiffs from the verdict on the second cause of action; and it is with that appeal that we are here concerned.

The exceptions relate: (a) to the trial judge's charge; (b) to the admission of certain testimony; and (c) to the cross-examination of one of plaintiffs' witnesses.

Prior to inviting bids the defendant made, along the right-of-way of the proposed pipeline, test borings, spaced approximately 500 feet apart and extending 10 feet below ground level. The results of these borings, showing subsoil classification and location of ground water, were logged in the field notes of defendant's supervising engineer, under whose direction the borings were made.

Among the "Special Conditions" of the plans as submitted to the plaintiffs in response to their acceptance of the invitation to bid, was the following:

"SC-25. *Test Holes*. The owner has made auger borings along the pipeline route to determine the character of the subsurface materials. The location and logs of these test holes are shown on the plans. While all test holes were sunk with reasonable care and in accordance with good practice, it is to be understood that there is no expressed or implied guarantee as to the accuracy of the information given nor of the interpretation thereof. Each bidder must form his own opinion of the character of the materials to be excavated, or which will be encountered, from an inspection of

the ground, place his own interpretation upon the information given on the test hole logs, and make such other investigations as he may desire."

The plans did not fully disclose the information contained in the logs of the test borings; they did not show location of ground water, and their subsoil classification differed from that of the logs. The gist of plaintiffs' cause of action is that ground water at the subsurface levels known to the defendant and shown on its field notes of the test borings but not revealed on the plans, and the presence of certain subsoil materials likewise known to the defendant but misrepresented on the plans, were unfavorable conditions resulting in increased cost of construction, for which they are entitled to compensation.

The defendant, admitting the variance between the information contained in its field notes and that disclosed in its plans, contended that the additional cost of construction was the result of the plaintiffs' inefficiency, and pleaded among other things, in bar of the claim, the last two sentences of SC-25 above quoted, and the following preamble to the proposal required of all bidders:

"The undersigned bidder, having examined the plans, specifications, general and special conditions, and other proposed contract documents attached hereto and referred to therein, and any and all addenda thereto, together with the general locations and route of the proposed pipe line and the character and condition thereof, and being acquainted with and fully understanding (a) the extent and character of the work covered by this proposal, (b) the location, arrangement, and specified requirements of and for the proposed pipeline and other work appurtenant thereto, (c) the location, character, and condition of existing roads, highways, pavements, utilities, drainage structures and facilities, and other installations and obstructions which may affect or be affected by the proposed work, (d) the character and extent of clearing and site preparation requirements,

(e) construction procedure in and across state and county highway right-of-way, (f) the nature and extent of the excavations to be made and the general character and condition of the materials to be removed therefrom, (g) the location and extent of necessary or probable trench and structure dewatering requirements, (h) the normal and possible flood stages of water courses crossed by or near the lines of trench, (i) the locations of the designated pipe unloading and receiving points and their relation to the work, (j) local conditions relative to labor, transportation, hauling, rail and truck delivery facilities, and (k) all other factors and conditions affecting or which may be affected by the specified work, hereby proposes. * * *''

The statement in SC-25 before quoted, that the owner had made auger borings along the pipeline route to determine the character of the subsurface materials, and that the location and logs of these test holes were shown on the plans, was a representation that the subsurface information revealed by the test hole borings had been accurately and fully disclosed on the plans. The contractor was entitled to rely upon that representation; and the owner's responsibility under it was not overcome by the disclaimer clauses above quoted.

*Hollerbach v. United States,* 233 U. S. 165, 34 S. Ct. 553, 58 L. Ed. 898; *Christie v. United States,* 237 U. S. 234, 35 S. Ct. 565, 59 L. Ed. 933; *United States v. Spearin,* 248 U. S. 132, 39 S. Ct. 59, 63 L. Ed. 166; *Hersey Gravel Co. v. State,* 305 Mich. 333, 9 N. W. (2d) 567, 173 A. L. R. 302; *Valentini v. City of Adrian,* 347 Mich. 530, 79 N. W. (2d) 885. Anno. 76 A. L. R. 268.

As was said in *Hollerbach v. United States, supra*:

"If the government wished to leave the matter open to the independent investigation of the claimants, it might easily have omitted the specification as to the character of the filling back of the dam. In its positive assertion of the nature of this much of the work it made a representation upon

which the claimants had a right to rely without an investigation to prove its falsity."

The trial judge, after having correctly instructed the jury that the statement hereinbefore quoted from SC-25 was a positive representation that the subsoil conditions encountered in the test hole borings were as shown on the plans, and that the plaintiffs' right to rely upon it was not overcome by the disclaimer clauses, proceeded to charge as follows:

"If you find from the evidence that a reasonable inspection of the site of the work by a reasonably prudent bidder would have suggested the difficulties to be encountered, then plaintiffs would not be entitled to recover on the second cause of action merely because they were not disclosed in the plans." And further:

"If you find from the evidence that the defendant was under a duty to fully disclose or furnish such facts as it had to the plaintiffs and you should further find from the evidence that the plaintiffs * * * reasonably should have known the difficulties they would encounter from all the facts and information they had at the time the bid was made, then I charge you under such circumstances they would not be entitled to recover."

■ The portion of the charge just quoted, and to which timely exception was taken, was erroneous and in our opinion requires reversal. It was in irreconcilable conflict with the correct instruction previously given; in effect it repudiated the obligation imposed by law upon the defendant, assuming to disclose on its plans the subsurface information revealed by its test hole borings, to disclose that information accurately and fully; it obviously tended to mislead and confuse the jury.

The remaining exceptions need not be discussed in greater detail than appears necessary in prospect of a retrial of the case.

■ Several exceptions charge error in permitting testimony as to general, or good, engineering practice: (a) in regard to the furnishing, by the owner to the

contractor, of information concerning ground water; and (b) in regard to independent investigation by bidders on water pipeline contracts, as to subsoil conditions and ground water. Since such testimony was incompetent to overcome the obligation of full disclosure heretofore discussed, objection to it should have been sustained.

Exception was also taken to defendant's introduction into evidence of a tabulation of bids made by all bidders on the project in question. In our opinion such evidence was not relevant to the issues involved, and should have been excluded.

Finally, appellants contend by one of their exceptions that the trial judge erred in permitting cross examination of Mr. E. H. Kemp, President of Dixie, concerning the disclaimer clauses. The record shows that this cross examination proceeded no farther than interrogation of the witness as to whether he had read the clauses in question and as to their effect on his preparation of the bid. We do not think that such interrogation was improper on cross examination. When a defendant's counsel asked the witness as to his interpretation of the disclaimer clauses, objection by plaintiff's counsel was sustained. This exception is overruled.

Reversed and remanded for new trial.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.